### KOCHMAN v. KARP.

(Supreme Court, Appellate Term. June 29, 1911.)

1. ACCORD AND SATISFACTION (§ 20*)—DURESS—EVIDENCE—SUFFICIENCY.

Evidence *held* insufficient to show that accord and satisfaction of a claim for goods sold was induced through duress.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. § 140; Dec. Dig. § 20.*]

2. ACCORD AND SATISFACTION (§ 26*)—EXISTENCE OF DISPUTE—EVIDENCE—SUFFICIENCY.

Evidence *held* to show existence of a bona fide dispute under a claim for goods sold, as affecting validity of an accord and satisfaction.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. § 164; Dec. Dig. § 26.*]

Appeal from Municipal Court, Borough of Manhattan, Eighth District.

Action by Bernard Kochman against Bernard Karp. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before SEABURY, GUY, and BIJUR, JJ.

Harvey C. Price, for appellant.

David G. Godwin, for respondent.

BIJUR, J. This action was brought to recover the balance of the purchase price of certain canned eggs delivered by plaintiff to defendant under an agreement between them that had continued in operation for some six months. Defendant's position is that between February 14th and 21st, when the eggs in question were delivered, serious controversies arose between plaintiff and himself regarding correctness of weight of some of the shipments, but particularly concerning the quality of the eggs. The contract provided that:

"The eggs are guaranteed to be packed from first quality fresh eggs only, and absolutely pure," etc.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Defendant further shows that the bakery to which he was delivering the eggs had complained of their quality and threatened to cancel his contract with them; that he informed the plaintiff of that fact, plaintiff having already delivered some of the eggs for defendant directly to the bakery; and that, at the same interview, plaintiff, in order to preserve the continuance of the contract with defendant, agreed in writing to pay defendant $1 per can for every can still undelivered to defendant under the contract in case the bakery should cancel its contract with him. This transpired on February 21st. Another interview took place on February 24th, when defendant informed plaintiff that the bakery had actually canceled its contract; that the eggs were in large part rotten, and after much mutual recrimination the whole transaction was "called off"—defendant giving plaintiff a check for $50 "in full to date," and plaintiff receipting as paid the bills for the very deliveries now sued upon. These receipts, it may be said in passing, seem to bear date of February 27th.

Plaintiff's claim is that there was no serious dispute as to either quantity or quality of the eggs, but that defendant maliciously, with a view of escaping his just obligation at a time when there was much public excitement concerning stored eggs, threatened to call up the board of health and have an embargo put on all of plaintiff's stock of eggs, and thus ruin him, unless he would sign the papers and accept the payment which are now pleaded by defendant as an accord and satisfaction.

The learned trial judge took considerable evidence, some of it on his own initiative, on the question whether the price of stored eggs was lower than the contract price at the time of these transactions, probably with a view of determining defendant's motive. It may be said in passing that the evidence adduced is not very clear or convincing that the price was lower, but in the view which I take of the case the fact either way is practically negligible.

[1] It is conceded by plaintiff that on their face the papers constitute an accord and satisfaction. His reply seems to be to the effect (1) that they were executed under duress; (2) that, as there was no bona fide dispute between the parties, they did not constitute an accord and satisfaction. The claims are somewhat inconsistent with one another.

If the circumstances were such as to warrant the defendant in any degree in threatening plaintiff to call in the board of health, it must have been that there was some serious dispute as to the quality of the eggs; and it is hard to understand how the plaintiff, as an ordinary business man, could have been affected by so absurd a threat, if the quality of the eggs was as good as warranted.

As to the occurrence of the threat, both defendant and his bookkeeper categorically deny any such proceeding. Nor is there any proof that the board of health would or could put a general "embargo" on plaintiff's business merely because an occasional can of eggs already delivered by him was found defective. Moreover, assuming such an improbable state of affairs to exist, and the further improbability of its being feared by plaintiff to be likely to be imposed unjustly upon

him, that state of "duress" seems to have lasted from February 21st to February 24th, or, as the date of the receipts would indicate, February 27th. The evidence, and the whole claim, as to this duress, is vague, fanciful, and incredible to a degree.

[2] Finally, his plea that there was no real dispute to justify accord and satisfaction has the appearance rather of an afterthought to invoke a well-known principle of law, which does not accord with the facts in the case, than to be the actual statement of the truth. Upon the presentation of a mere receipt in full, or some similar single document of accord, the question has been properly considered by the court whether there existed at the time a sufficient controversy to warrant the belief that some claim had been surrendered by one or the other party as a consideration for a settlement; but I know of no case in which it was even seriously discussed whether a dispute existed as to an actual claim, where the papers on their face give conclusive evidence of a continuing controversy lasting at least three days, and in which the party now denying the dispute repeatedly received and executed, respectively, papers that confirm its existence. I believe that plaintiff's position that there was no bona fide dispute relates rather to his very natural insistence on the insincerity of defendant's side in the dispute than to the existence of an actual and serious controversy, which seems to be evidenced beyond any reasonable doubt

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.